# SUPREME COURT,

## STATE OF KANSAS.

## JULY TERM, 1900.

### PRESENT: .

HON. FRANK DOSTER, CHIEF JUSTICE.
HON. WILLIAM A. JOHNSTON, } ASSOCIATE JUSTICES.
HON. WILLIAM R. SMITH,

THE J. B. WATKINS LAND MORTGAGE COMPANY V.
M. A. MULLEN.

No. 11,365.* (61 Pac. 385.)

HOMESTEAD AND EXEMPTIONS—*Judgment of Probate Court—
Collateral Attack.* The United States homestead law provides:
"No land acquired under the provisions of this chapter shall in
any event become liable to the satisfaction of any debt contracted
prior to the issuing of the patent therefor." (U. S. Rev. Stat.
1878, § 2296.) Notwithstanding the exemption thus declared, a
judgment of a probate court ordering a sale of land, the title to
which was acquired under such law, for the payment of debts
contracted prior to the issuance of the patent therefor, will be
upheld as against a collateral attack, unless the fact that such
debts antedate the patent appears upon the record of the probate
court's proceedings.

Error from court of appeals, southern department,
A. W. DENNISON, B. F. MILTON, and M. SCHOONOVER,
judges. Opinion filed June 9, 1900. Reversed.

---

*For opinion by court of appeals, see 8 Kan. App. 705, —REP.

1—62 KAN.

*Bishop & Mitchell,* and *J. H. Mitchell,* for plaintiff in error.

*H. E. Winterburn,* and *J. W. McCormick,* for defendant in error.

The opinion of the court was delivered by

DOSTER, C. J. : This is a proceeding in error from an order refusing to confirm a sheriff's sale of real estate and from an order setting aside the sale. It was first taken to the court of appeals. That court affirmed the judgment of the court below, and from that order of affirmance error has been prosecuted to this court.

Bridget O'Connor acquired title to the land under the homestead laws of the United States. She died. An administrator of her estate was appointed, who petitioned the probate court for leave to sell the land for the payment of debts. Due notice of the application for leave to sell was given. The order to sell was allowed, the sale made to one S. J. Collins, and an administrator's deed executed to him. From him the land passed to one A. H. Teeter, who executed a mortgage upon it to secure a debt. This mortgage was foreclosed. At the foreclosure sale the plaintiff in error, The J. B. Watkins Land Mortgage Company, became the purchaser. The defendant in error, Mary A. Mullen, is an heir of the deceased Bridget O'Connor, and she interposed a proceeding to set aside the sale to the plaintiff in error, on the ground that the debts for the payment of which the land was sold were contracted prior to the issuance of the patent to it, and that consequently such sale and the title founded thereon were void under the United States homestead laws.

It will thus be seen that the attack made upon the administrator's sale and deed is a collateral one. Can it be maintained? In our judgment it cannot, because the record in the probate court of the administration of the estate of Bridget O'Connor fails to show that the debts for which the land was sold were contracted prior to the issuance of the patent. The proof that was made as to the time the debts were contracted was made upon the hearing of the motion to confirm and the proceedings to set aside the sale, and not upon the hearing of the claims against the estate, nor upon the hearing of the application for leave to sell the land. The evidence offered in proof of the claims did not show when the debts were contracted, nor did the application of the administrator for leave to sell or the evidence in support of such application show when the debts were contracted. The language of the probate court granting the application for leave to sell negatives the idea that the debts, to pay which the sale was ordered, had been contracted before the issuance of the patent. That court, among other things, found that "the requirements of law and the orders of the court have been complied with." This, although general in terms and formal in language, is nevertheless, to the extent to which it should be taken into account on either side, a finding in opposition to the claim that the debts were contracted before the patent issued.

Section 2296 of the Revised Statutes of the United States reads as follows: "No land acquired under the provisions of this chapter shall in any event become liable to the satisfaction of any debt contracted prior to the issuance of the patent therefor." This section, as is seen, provides an exemption from forced sale for the satisfaction of debts antedating the acqui-

sition of title by patent, and full effect has already been given to it by all the courts in cases where the claim of exemption was seasonably made. (Waples, Hom. and Exempt. 926.) Our attention has not been called to any decision on the effect of an inadvertent or erroneous judgment of a court of competent jurisdiction denying the claim of exemption, when such judgment was collaterally attacked, as was done in this case. Upon principle, however, we are fully persuaded that such judgment can only be reviewed upon appeal or other direct proceeding, and not in a collateral action. The general rule is that the judgments of courts of general jurisdiction, acting upon a subject-matter within that jurisdiction, are conclusive until reversed or otherwise vacated by a direct proceeding brought therefor. In this respect there is no difference between courts of general jurisdiction over all matters and courts of general jurisdiction over a single subject-matter. Though the jurisdiction be limited to a particular subject-matter, yet if authority exists to do anything to that subject-matter that can be done to it, the judgment of the court with respect to it is as conclusive as though pronounced by a court unlimited as to the list of things over which it may exercise jurisdiction.

Probate courts are everywhere courts of general jurisdiction over the estates of deceased persons, and almost everywhere a conclusive presumption of verity attaches to the record of their proceedings. (1 Black, Judg. § 284.) This view of the character of probate courts and the binding force of their adjudications has always been taken in this state. In *Shoemaker v. Brown*, 10 Kan. 383, it was said:

"The probate court has jurisdiction to make final settlements with administrators. Its findings and

decisions upon matters within its jurisdiction are in the nature of judicial determinations, and cannot be impeached collaterally except for fraud in obtaining the same.''

In *Calloway v. Cooley*, 50 Kan. 754, 32 Pac. 376, this court, speaking of the power of the probate court in respect to the proof of wills, said: ''Being vested with jurisdiction, its finding and determination are final, unless corrected upon appeal or proceedings in error, and are not subject to collateral attack.'' In *Proctor v. Dicklow*, 57 Kan. 119, 45 Pac. 86, it was said: ''The adjudication of the probate court in a matter within its jurisdiction is as conclusive upon the parties as the judgment of the district court, and it should be allowed to stand unless set aside upon appeal or some direct attack.'' In *Keith v. Guthrie*, 59 Kan. 200, 52 Pac. 435, it was said:

''The probate court is a court of exclusive jurisdiction over the distribution of the estates of deceased persons, subject to appeal to the district court. Its orders made in the exercise of its jurisdiction cannot be collaterally attacked and their effect frustrated by proceedings in other courts. . . . While probate courts are in a sense courts of inferior jurisdiction, they are not inferior in the sense that superior courts will ignore their judgments and orders or undertake their correction otherwise than upon appeal or by other modes provided by statute.''

In the opinion of the court of appeals a quotation is made from one of the notes in 12 A. & E. Encycl. of L. (1st ed.) 247, as follows: ''There is a tendency in the later decisions in the United States to hold that jurisdiction is not only the power to hear and determine, but also the power to enter the particular judgment in the particular case.'' If by this is meant that when a court invested with general jurisdiction

over a particular subject-matter wrongly applies the law to a proved or admitted state of facts its judgment is outside its jurisdiction and subject to collateral review, we unhesitatingly say that no such tendency is to be observed in the later decisions, because such a tendency, instead of modifying the general rule or introducing an exception to it, would go to its absolute subversion. It may be that some constitutional provisions are framed upon such high principles of natural right or public policy as to be beyond the power of the courts to misapply or wrongly interpret them; and, of course, a statute can be framed in such explicit and positive terms that a court disregarding its requirements would be held to have acted beyond its jurisdiction; but, generally speaking, when a court is invested with power, upon evidence, to determine a state of facts and declare the law applicable thereto, its decision, no matter how erroneous, is conclusive, unless the error of its judgment is apparent upon the face of its record. Herein, we think, lies the mistake of the court of appeals in this case. The time when the debts of Bridget O'Connor were contracted was a matter of evidence. The date of the land patent was likewise a matter of evidence. Presumptively, the probate court received evidence as to these two matters; and, presumptively, made its order for a sale of the land in view of the proved fact that the debts were contracted after the patent was issued. It had jurisdiction to hear this evidence and to determine these matters, and its judgment, although erroneous in point of fact, is binding upon the interested parties.

A stronger case than this one in favor of the theory of the conclusiveness of the judgment of the probate court is *Wolfley v. McPherson*, 61 Kan. 492, 59 Pac. 1054. The question in that case was as to the erro-

neous classification of a demand against the estate of a deceased person.  In the opinion it was said :

"Counsel for defendant in error attempt to avoid the bar of the statute of limitations upon the theory that the original order of classification, being contrary to the statute, was void, and therefore, as a void judgment, it could be vacated at any time, under section 603.  The judgment was not void.  It was erroneous only.  In *Gille v. Emmons*, 58 Kan. 118, 48 Pac. 569, we held that 'a judgment entirely outside the issues in the case, and upon a matter not submitted to the court for its determination, is a nullity, and may be vacated and set aside at any time upon motion by the defendant.'  That case, however, was entirely unlike this one.  In that case a judgment was rendered in favor of a party upon a claim he had never made.  In this case a judgment was rendered against a party upon a claim which she did make.  In stating to the probate court the character of her claim she appropriated in her behalf the provisions of the law assigning it to the second class.  The jurisdiction of the probate court was thus invoked, not only as to the existence of the claim, but as to the priorities of classification to which it was entitled.  The statute regulating the matter of classification is not plain.  It required construction to ascertain its meaning, and this court, subsequently to the original order of classification made by the probate court, was called upon to construe it.  (*Cawood v. Wolfley*, supra.)  The mistake which the probate court made in construing it was an error only.  Every question of law, as well as fact, was within its jurisdiction to determine.  Its determination, though erroneous, was not void."

The writer of this opinion, who was also the writer of the one from which the above quotation is made, has some doubt, and at the time of that decision had some doubt, as to whether the doctrine in question was not pushed to an extreme in that case, but as to

Watkins v. Mullen.

its entire application to the facts of this case neither he nor his associates have any doubt.

Some courts have drawn a distinction between the records of so-called inferior courts which affirmatively showed jurisdiction upon their face, and those which did not but were silent as to recitals of jurisdictional facts, holding that the former were conclusive as against collateral attack while the latter were not. This distinction, we think, cannot be drawn in this state as to the judgments of probate courts. The decisions heretofore made as to the character of those courts and the effect of their records preclude us from viewing their judgments as otherwise than conclusive, unless the errors committed by them affirmatively appear on the face of their records. This we believe to be the general rule. (1 Black, Judg. § 283.)

"A court of record which has, by statute, all the power that any court could have over a certain subject of jurisdiction, especially if it be a subject of jurisdiction under the general rules of law or equity, is to be regarded (as to cases within that class) as a court of superior jurisdiction, within the rule which presumes the jurisdiction of such courts to render a particular judgment." (*Stahl v. Mitchell,* 41 Minn. 325, 43 N. W. 385.)

This doctrine was distinctly declared as to the judgments of probate courts in *Howbert v. Heyle,* 47 Kan. 58, 65, 27 Pac. 116, and *Bradford v. Larkin,* 57 Kan. 90, 94, 45 Pac. 69.

The judgments of the court of appeals and of the district court are reversed, with directions to the latter court to proceed in the case in accordance with this opinion.